KOVACS et al., Appellants,

v.

BAUER et al.; A.D.T. Security Systems MidSouth, Inc. et al., Appellees.

[Cite as *Kovacs v. Bauer* (1996), 118 Ohio App.3d 591.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69400.

Decided July 3, 1996.

*Shane, Shane & Henderson* and *Louis G. Henderson,* for appellants.

*Patrick Murphy;* *Weston, Hurd, Fallon, Paisley & Howley* and *Gary W. Johnson,* for appellees.

PATRICIA ANN BLACKMON, Judge.

Plaintiff-appellant, Melissa A. Kovacs, appeals a summary judgment granted in favor of defendant-appellees, A.D.T. Security Systems MidSouth, Inc. ("A.D.T.") and Barry Kinney, and assigns the following error for our review:

"The trial court erred in granting summary judgment on plaintiff-appellant's claim for intentional infliction of emotional distress."

Having reviewed the record of the proceedings and the legal arguments presented by the parties, we reverse the decision of the trial court. The apposite facts follow.

Melissa Kovacs was employed by A.D.T. on March 18, 1992. In August 1992, she gave birth to her son and took maternity leave. As a result of her delivery, she developed a recto-vaginal fistula. After her return to work, she was advised by her physician, Dr. Henry Eisenberg, that her condition would require surgery. On December 11, 1992, Kovacs provided A.D.T. with written notice that she would be away from work from January 11, 1993 through March 1, 1993 due to the need for surgery and recovery time. She also provided A.D.T. with a "Disability Certificate" signed by her doctor. After surgery, Kovacs's physician provided an "Attending Physician Report" to A.D.T. advising them that Kovacs was experiencing "delayed healing," and she may "return to work on March 1, 1993 (not before this date)."

On January 22, 1993, Kovacs received a letter from Barry Kinney, the Regional General Manager of A.D.T., Cleveland Office. He requested that she have a second-opinion examination with a physician selected by A.D.T. and informed her that her benefits would be withheld pending the examination. Kovacs was upset by A.D.T.'s request for a second opinion because her treating physician had informed her that a pelvic or rectal examination would interrupt the healing process and could possibly cause a recurrence of the recto-vaginal fistula. She contacted her physician, who again advised her not to undergo a pelvic or rectal examination during her recovery period.

On February 8, 1993, Kovacs met with Kinney and Christine Bruce. Kinney had approved Kovacs's disability leave prior to this meeting, but did not inform her of his decision. During the meeting, Kovacs informed Kinney that her doctor had advised against an examination during her recovery period because it could cause problems with her recto-vaginal fistula. Kinney told Kovacs he believed she was "conning" the company because there was some confusion as to her return-to-work date. Kinney also advised Kovacs that her disability benefits would be in jeopardy if she did not have the second-opinion examination. Kovacs requested they keep the disability benefits so long as she did not have to undergo the second-opinion examination, but Kinney told her that was not an option. Jeff

Geer, with the Human Resources department of A.D.T., confirmed Kinney's right to require a second-opinion examination.

Believing she did not have a choice and because she feared she would lose her job, Kovacs went to the second-opinion examination with Joseph Bauer, M.D. against the advice of her physician. After the second-opinion examination, Dr. Bauer confirmed the recommended recovery period, and Kovacs did suffer a recurrence of her recto-vaginal fistula, which required additional surgery. Kovacs subsequently resigned from her employment with A.D.T.

Melissa and Christopher Kovacs filed a complaint against A.D.T., Barry Kinney, Christine Bruce, Jeff Geer, and Joseph Bauer. In her amended complaint, she alleged that Kinney, Bruce, and Geer, while acting in the course and scope of their employment, intentionally caused her physical and emotional injury. She also alleged medical malpractice against Bauer. A.D.T., Kinney, Bruce, and Geer moved for summary judgment. The Kovacs dismissed their cause of action against Bruce and Geer and filed a brief in opposition to A.D.T.'s and Kinney's motions for summary judgment. The trial court granted summary judgment in favor of A.D.T., Kinney, Bruce, and Geer and stated as follows:

"Accepting as true all that Ms. Kovacs alleges, she has not set forth facts which show an intent to injure her physically or to cause her extreme emotional distress. At best she has shown an intent to deny her disability benefits and to test whether she placed a greater priority on financial benefits than on possible injury to her health. At all times, Ms. Kovacs retained the right and the power not to have the second examination. She retained also the possibility of utilizing her personal physician more aggressively to argue against the second examination or to develop a safer way to satisfy the request of Kinney and Geer for a second opinion."

In her sole assignment of error, Melissa Kovacs appeals summary judgment in favor of A.D.T. and Barry Kinney and argues that the trial court erred in granting summary judgment on her claim of intentional infliction of emotional distress.

The standard of review for an appeal from summary judgment is plenary. This court applies the same test as the trial court, which is set forth in Civ.R. 56, and we evaluate the record according to Civ.R. 56. Civ.R. 56 specifically provides that before summary judgment may be granted it must be determined that "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v.*

*Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

Moreover, it is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1987), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. Doubts must be resolved in favor of the nonmovant. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–140. Under Civ.R. 56(E) "a nonmovant may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

A claim for intentional infliction of emotional distress requires proof of the following four elements:

"1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' Restatement of Torts 2d (1965) 73, Section 46, comment d; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it,' Restatement of Torts 2d 77, Section 46, comment j." *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34, 11 OBR 63, 66, 463 N.E.2d 98, 103. See, also, *Ashcroft v. Mt. Sinai Med. Ctr.* (1990), 68 Ohio App.3d 359, 366, 588 N.E.2d 280, 284.

"To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. Where the risk is great and the probability increases that particular consequences may follow, the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." *Hines v. Ctr. for Human Serv.* (June 16, 1988), Cuyahoga App. No. 54021, unreported, 1988 WL 86733. See, also, *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489.

In this case, the trial court weighed Melissa Kovacs's evidence and determined the truth of that evidence. The evidence, the court said, at best showed an intent by her employer to deny her disability benefits and to test whether she gave a greater priority to financial benefits than to her health. As to her health, the trial court blamed her and concluded that she had the power to refuse the examination, an examination the trial court concluded she should have aggressively argued against by utilizing her personal physician, or she should have found a safer way to satisfy her employers' request for a second opinion.

█ This is not the trial court's role on summary judgment. Summary judgment requires the trial court to determine whether there is a genuine issue for trial. Likewise, on review, we undertake that same responsibility. Here, we conclude that there is a genuine issue for trial as to whether Kovacs's employer intentionally inflicted emotional distress on her.

In the tort of intentional infliction of emotional distress there are four factual elements at issue: whether Kinney knew or should have known that his actions would result in serious emotional distress, whether his conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such as to be utterly intolerable in a civilized society, whether the actor's action proximately caused the plaintiff's psychic injury, and whether the plaintiff's mental anguish is serious and of a nature that no reasonable person could be expected to endure.

█ In resolving the intent question, we must decide if reasonable minds could differ as to whether Kinney knew or should have known that Kovacs would suffer serious emotional distress from his actions. The tort of intentional infliction of emotional distress does not require proof of specific intent or the use of a strict intent standard. *Potter v. Troy* (1992), 78 Ohio App.3d 372, 382, 604 N.E.2d 828, 834; see, also, *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 575 N.E.2d 428. Therefore, where the plaintiff sets forth sufficient evidence as to whether the defendant's conduct was intentional, a question of fact for the jury is created. *Id.*

In this case, Kinney told Kovacs that declining benefits in order to forgo a second-opinion examination was "not an option." From this statement, it was reasonable for Kovacs to infer she might lose her job if she did not submit to the examination. Kinney required a second opinion because he did not believe that her condition would require three months off in addition to her maternity leave. The employer's requirement of a second examination became a serious dilemma for Melissa Kovacs because her physician had warned that a second examination would result in recurrence of the condition. Ultimately, Kovacs agreed to the second-opinion examination because she was afraid of losing her job. As a result

of that examination, she suffered a recurrence of her fistula and had to undergo additional surgery.

Kinney's actions, leading an employee to believe that her job was at stake if she did not submit to an examination, was sufficient to cause reasonable minds to differ as to whether Kinney knew or should have known such actions would cause emotional distress. Emotional distress would naturally exist if one has to choose between one's health and one's job. Accordingly, the issue of intent raises a question for the trier of fact.

We now turn to the question of extreme and outrageous conduct. An employer's conduct has been found to be extreme and outrageous where an employee is required to do something reprehensible and is compelled by the employer's implied threat of retribution. *Tschantz v. Ferguson* (1994), 97 Ohio App.3d 693, 647 N.E.2d 507 (where sexual relationship compelled by employer was sufficient evidence of extreme and outrageous conduct). See, also, *Clifton v. Van Dresser Corp.* (1991), 73 Ohio App.3d 202, 209, 596 N.E.2d 1075, 1079 (informing a person the day before cancer surgery that her medical insurance would be canceled the day after surgery when coverage for the surgery had already been obtained was extreme and outrageous conduct).

As to whether Kinney's action was outrageous or extreme we need only look to the record. Kinney knew he had granted Kovacs's disability leave; yet he concealed this from her. He led her to believe her benefits were in jeopardy. When she offered to forgo the benefits so as not to undergo the examination, he informed her that forgoing her benefits was not an option. Melissa Kovacs in response submitted to the examination because she inferred that her job, as well as her benefits, was in jeopardy. Under the circumstances, this was a reasonable inference.

After reviewing the facts, we find it was reprehensible for Kinney to compel Kovacs to undergo an examination he knew to be harmful to her. Furthermore, when Kinney's reprehensible demand is considered in view of his prior approval of Kovacs's request for leave, there was no justification for his actions. Consequently, reasonable minds could differ as to whether Kinney's actions constituted outrageous or extreme behavior.

There is no question that Melissa Kovacs took the examination at the urging of Kinney and agonized over making the choice. Accordingly, reasonable minds could differ as to whether Kinney's actions proximately caused the recurrence of her recto-vaginal fistula and the mental anguish which was attendant to the injury. Therefore, whether Kovacs suffered mental anguish was a question for the trier of fact.

■ The final question of fact is whether Kovacs's mental anguish was serious and of a nature that no reasonable person could be expected to endure. "[S]erious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 78, 6 OBR 114, 119, 451 N.E.2d 759, 765.

Here, Melissa Kovacs was required to choose between her job and her health, a serious dilemma in these times. Circumstances which a reasonable person would be unable to cope with exist in this case. Kovacs underwent a difficult pregnancy, followed by surgery to repair a recto-vaginal fistula. Upon her request for additional sick leave, she was compelled to submit to a second-opinion examination during her recovery period.

Kovacs was placed in a position where severe physical injury was imminent if she submitted. Kovacs was told she did not have "an option"; she submitted to the examination and suffered further physical injury as well as mental anguish. No reasonable person should be expected to cope with having to test the importance of his job by submitting to an examination which is likely to cause serious physical injury. Accordingly, under the circumstances of this case, there was sufficient evidence on which reasonable minds could differ as to whether Kovacs suffered from serious emotional distress.

The trial court reduced this case to a harmless test of Kinney's intent to determine if Kovacs placed greater priority on financial benefits than on possible injury to her health, even though Kinney's actions clearly were sufficient to demonstrate extreme and outrageous conduct. Ultimately, it is the jury's responsibility as trier of fact to determine whether Kinney's test was harmless or whether he caused harm to Melissa Kovacs. Construing all the evidence most strongly in favor of Kovacs, we find there are genuine issues of material fact as to whether Kinney's actions, as a manager for A.D.T., constituted an intentional infliction of emotional distress.

Accordingly, we conclude that summary judgment was incorrect, and this cause is remanded for trial.

The judgment of the trial court is reversed, and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

SPELLACY, C.J., concurs.

PORTER, J., dissents.

JAMES M. PORTER, Judge, dissenting.

I must respectfully dissent from the majority opinion for the reasons that (1) there was no intent on the part of the A.D.T., defendants to cause the plaintiff emotional harm or knowledge on their part that harm was substantially certain to occur from their request for a second medical opinion; (2) the defendants' conduct in requiring the second examination pursuant to the benefits program was privileged, as a matter of law, and in any event was not so extreme or outrageous as to go beyond the bounds of decency and be considered utterly intolerable in a civilized society; (3) defendants' conduct could not be the proximate cause of plaintiff's subsequent injury at the hands of Dr. Bauer, whose negligence was an independent intervening cause; and (4) there was no evidence that her mental distress at the prospect of the doctor's examination was so severe and debilitating that no reasonable person could be expected to endure it. In short, the undisputed facts establish that summary judgment for the A.D.T. defendants was entirely proper.

The Supreme Court in *Fyffe v. Jeno's Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraphs one and two of the syllabus, set forth the law applicable to an intentional tort action brought against an employer:

"Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed.1984), in order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)

"To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere

knowledge and appreciation of a risk—something short of substantial certainty—is not intent. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)"

Plaintiff's suit against the A.D.T. defendants is for intentional infliction of emotional distress based on her claim that they coerced her to submit to a second medical examination by Dr. Bauer to verify the length of time required to recover from surgery and return to work. She also joined Dr. Bauer in this action for his malpractice in conducting the examination, which caused her physical and emotional injury. The trial court granted summary judgment in favor of A.D.T. and its employees and the claim against Dr. Bauer was set for trial.

Plaintiff began working with A.D.T. on March 18, 1992. On August 13, 1992, she took maternity leave and gave birth to a child two weeks later. She suffered complications afterwards, which required surgery to repair a rectovaginal fistula. She returned to work on October 4. On December 11 she was informed that her surgery had been scheduled for January 12, 1993. She originally requested three weeks off following the surgery to recuperate. Plaintiff had her outpatient surgery on January 11, 1993. Thereafter, instead of taking the three weeks she had initially requested, she changed the request to seven weeks. In support of her request, plaintiff provided a disability certificate from her doctor indicating a need for seven weeks to recuperate. This certificate, however, was dated as of December 12, 1992, one month before the surgery.

A.D.T.'s short-term disability policy under which plaintiff was receiving disability income benefits required an employee to submit to a second medical examination at A.D.T.'s option:

"WHEN BENEFITS BEGIN. Plan Benefits on the eighth calendar day of absence resulting from non-work related injury or illness. The Company will require documentation from your physician to substantiate your claim for benefits and may also require you to have a medical examination by a physician of the Company's choice at the Company's expense." A.D.T. Security Systems Benefit Program for Associates, at S&A–3.

Plaintiff was apprised of this policy, as she received a copy in her employee binder when she began working at A.D.T.

A.D.T. became suspicious of plaintiff's motive for taking the seven weeks off instead of the initial three requested, as she had already missed about twenty weeks of work out of fifty weeks of employment. She had also shown a disposition toward dishonesty by previously failing to notify A.D.T. that she had been overcompensated in her bonus pay and telling co-workers about her good fortune. Therefore, A.D.T. requested that plaintiff be examined by a physician of

its choice to verify the amount of time for recuperation needed by plaintiff. The A.D.T. General Manager told her "he thought [she] was 'conning' the company, and that there was some confusion with regard to [her] return-to-work date."

Plaintiff refused to see the first physician that A.D.T. chose. She argued that she would go only to a physician with similar qualifications to her own. A.D.T. then used the referral services of the Cleveland Academy of Medicine to find a physician comparable to plaintiff's own physician and close to plaintiff's residence. The academy recommended Dr. Joseph A. Bauer, Jr., a board-certified, Harvard Medical School graduate. Plaintiff still was reluctant to be examined by a physician other than her own. However, she was informed that in order to guarantee receiving the disability payments during her leave of absence she had to submit to the exam. Plaintiff claims she told defendants that "my doctor did not want me to see another doctor, that he felt it was unnecessary, and that it could possibly cause problems with my rectovaginal fistula." There is no evidence that plaintiff was ever threatened by defendants with loss of her job for failure to submit to the second examination. Plaintiff conceded this on her deposition.

After calling her own doctor, plaintiff then consented to the exam, and Dr. Bauer confirmed her need to have the seven weeks for recuperation. It is alleged that Dr. Bauer's examination delayed the healing process from the original surgery and required additional reparative surgery and prolonged plaintiff's recuperation. Instead of going back to work at A.D.T., plaintiff resigned and brought the instant suit. Plaintiff claims that A.D.T.'s conduct and Dr. Bauer's examination caused her to experience pain, suffering, additional healing and expense.

The majority concludes that "the issue of intent raises a question for the trier of fact." There is no evidence that A.D.T. or its employees intended any harm to the plaintiff. The record is unmistakable that they went to great lengths to accommodate her personal problems until they became suspicious of her work ethic and dedication to her job. Plaintiff was hired March 18, 1992 and went on maternity leave August 13, 1992, less than six months later. Prior to going on maternity leave, she called in sick or took off for doctor appointments on seventeen different days. She returned from maternity leave on October 4, 1992. Although a new employee, she was off twenty of the first fifty weeks on the job. Despite this record, there is no evidence that she received reprimands, criticism or threats of job security.

When A.D.T. learned she was going to take off seven rather than three weeks following the January 11, 1993 surgery, it requested that she obtain a second opinion from its designated doctor as to her period of recuperation. The disability certificate supplied by her personal physician was dated December 12,

1992, a month before the surgery occurred. Her employer had every right under the disability benefits program to request such an opinion. The request was privileged and cannot be the basis for an intentional tort claim. See Restatement of Law 2d, Torts (1965) § 45, Comment *g*:

"The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." *Id.* at 239. Quoted and followed by this court in *Condon v. Body, Vickers & Daniels* (1994), 99 Ohio App.3d 12, 22, 649 N.E.2d 1259, 1265–1266; *Czubaj v. E.B.P., Inc.* (Oct. 12, 1995), Cuyahoga App. No. 65517, unreported, 1995 WL 601201, at 12; *Vitanza v. First Natl. Supermarkets, Inc.* (June 24, 1993), Cuyahoga App. No. 62906, unreported, 1993 WL 226576, at 9–10.

Surely an employer is entitled to question the bona fides of its employees' excuses without being subjected to an intentional tort claim. *Czubaj, supra* (employer's confrontation with employee regarding substandard work performance was not outrageous); *Vitanza, supra* (employer's conducting a haphazard investigation of employee's pilfering was not outrageous as employer has legal right to terminate an at-will employee); *Neal v. Hamilton Cty.* (1993), 87 Ohio App.3d 670, 679, 622 N.E.2d 1130, 1137 (employer's actions were not outrageous or intended to cause employee emotional distress, but were taken according to personnel manual and for the purpose of assuring that payroll office ran efficiently); *Hanly v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73, 82, 603 N.E.2d 1126, 1132 (employer's conduct in dismissing employee for sexual harassment was not outrageous); *Foster v. McDevitt* (1986), 31 Ohio App.3d 237, 239, 31 OBR 520, 523, 511 N.E.2d 403, 406 (since employee's "employment was at-will, [employer] was entitled to terminate him, regardless of whether [employer] knew or intended that the termination would add to his emotional distress").

Aside from the privilege, there was no evidence that the A.D.T. defendants had any knowledge that a second examination was "substantially certain" to cause serious injury to plaintiff. Plaintiff's own affidavit established that her own doctor thought it was unnecessary and could "possibly cause problems with [her] rectovaginal fistula." This is a far cry from the knowledge of substantial certainty of injury required by *Fyffe, supra*, paragraph two of syllabus: "mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." Furthermore, no one told plaintiff she would lose her job if she refused the second exam. The second exam was a prerequisite to receiving sick benefits, not to keeping her job. When Dr. Bauer confirmed that seven weeks was necessary for recuperation, A.D.T. raised no objection and made plans for plaintiff's return to work. There is no credible evidence to support the majority's

conclusion that "it was reasonable for Kovacs to infer she might lose her job if she did not submit to the examination." Plaintiff quit without any advance notice and filed this suit against A.D.T. and Dr. Bauer.

There is nothing in this scenario to establish that A.D.T. intended plaintiff's problems nor was there any knowledge to a substantial certainty that intolerable mental anguish would result from requiring a second examination.

By the same token, no reasonable person could find that A.D.T.'s conduct attained the extraordinary level of extreme and outrageous conduct beyond all bounds of human decency and regarded as utterly intolerable in a civilized society. There is simply no evidence to support the majority's conclusion that A.D.T.'s conduct was "reprehensible" or without "justification." I find ample justification for what any reasonable employer would consider a harmless request for a second opinion. The plaintiff's spotty record of attendance, her dishonest conduct in retaining unearned bonus payments, the contradictory requests for additional recuperative time, and the contractual right to have a second evaluation by a different physician to support sick benefits offer ample justification for A.D.T.'s request.

In any event, "reprehensible" and "unjustified" conduct is not sufficient to sustain the cause of action. As this court recently stated in *Dickerson v. Internatl. United Auto Workers Union* (1994), 98 Ohio App.3d 171, 178–179, 648 N.E.2d 40, 45:

"In attempting to define what constitutes extreme and outrageous conduct, Ohio has adopted Sections 46(1) and (2) of the Restatement of Law 2d, Torts (1965), and the comments thereto as standards to be used in deciding emotional distress cases. *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374–375, 6 OBR 421, 426, 453 N.E.2d 666, 671–672, the case in which the Ohio Supreme Court first recognized the tort at issue, quotes Comment *d* of the Restatement in describing the standard:

" ' "[It] has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

" ' "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. * * * " ' Followed in *Reams-nyder v. Jaskolski* (1984), 10 Ohio St.3d 150, 153, 10 OBR 485, 487, 462 N.E.2d 392, 394; *Ashcroft v. Mt. Sinai Med. Ctr., supra,* 68 Ohio App.3d at 366, 588 N.E.2d at 284; *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34, 11 OBR 63, 66, 463 N.E.2d 98, 103." See, also, *Hines v. Ctr. for Human Serv.* (June 16, 1988), Cuyahoga App. No. 54021, unreported, 1988 WL 86733 at 6 ("As reprehensible as the appellants' actions may seem, as a matter of law, their conduct fails to establish a jury question on a claim for the intentional infliction of serious emotional distress.").

Further, there was no reason for A.D.T. to foresee that a Harvard-trained, board-certified physician (Dr. Bauer), recommended by the Cleveland Academy of Medicine, would, regardless of the circumstances, act in a negligent manner or cause further injury to the plaintiff in violation of the cardinal principle of medicine—*primum non nocere* (first, do no harm). In short, A.D.T.'s conduct could not, as a matter of law, be the proximate cause of any new injury to plaintiff. The majority is simply wrong, as a matter of law, when it states that "reasonable minds could differ as to whether Kinney's [A.D.T.'s] actions proximately caused the recurrence of her rectovaginal fistula and the mental anguish which was attendant to the injury." Dr. Bauer's acts were an intervening cause, entirely independent of A.D.T.'s conduct, which severed any causal relationship between A.D.T.'s acts and plaintiff's subsequent injuries. As the Ohio Supreme Court in *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 584–585, 613 N.E.2d 1014, 1024–1025, explained:

"The intervention of a responsible human agency between a wrongful act and an injury does not absolve a defendant from liability if that defendant's prior negligence and the negligence of the intervening agency co-operated in proximately causing the injury. If the original negligence continues to the time of the injury and contributes substantially thereto in conjunction with the intervening act, each may be a proximate, concurring cause for which full liability may be imposed. 'Concurrent negligence consists of the negligence of two or more persons concurring, not necessarily in point of time, but in point of consequence,

in producing a single indivisible injury.' *Garbe v. Halloran* (1948), 150 Ohio St. 476, 38 O.O. 325, 83 N.E.2d 217, paragraph one of the syllabus.

"In order to relieve a party of liability, a break in the chain of causation must take place. A break will occur when there intervenes between an agency creating a hazard and an injury resulting therefrom another conscious and responsible agency which could or should have eliminated the hazard. *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 323, 58 O.O. 119, 130 N.E.2d 824, paragraph one of the syllabus; *Thrash v. U–Drive–It Co.* (1953), 158 Ohio St. 465, 49 O.O. 402, 110 N.E.2d 419, paragraph two of the syllabus. However, the intervening cause must be disconnected from the negligence of the first person and must be of itself an efficient, independent, and self-producing cause of the injury." See, also, *Anderson v. St. Francis–St. George Hosp.* (1992), 83 Ohio App.3d 221, 226, 614 N.E.2d 841, 844–845; *Reed v. Weber* (1992), 83 Ohio App.3d 437, 441, 615 N.E.2d 253, 255–256; *Turner v. Children's Hosp., Inc.* (1991), 76 Ohio App.3d 541, 558, 602 N.E.2d 423, 433–434. In the case herein, Dr. Bauer's negligence in conducting the exam was an independent, superseding cause of plaintiff's injury which was not foreseeable by A.D.T. The product of Dr. Bauer's malpractice cannot, as a matter of law, be charged to A.D.T., or every employer is at risk merely for sending its employees to a doctor.

Finally, there is no evidence on this record that any mental anguish plaintiff may have suffered in agonizing over the decision to lose sick benefits or submit to the second examination was so serious and debilitating that no reasonable person could be expected to endure it. I also find that the fleeting tensions, confrontations and events leading to the second examination would not have caused a reasonable person to react as this plaintiff did. As this court stated in *Dickerson, supra,* at 183, 648 N.E.2d at 48, quoting Comment *j* to the Restatement of the Law 2d, Torts, Section 46:

" 'The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge.'

"As this court stated in *Lynn v. Allied Corp.* (1987), 41 Ohio App.3d 392, 401, 536 N.E.2d 25, 35:

" 'While it may have been reasonably foreseeable Mrs. Lynn would become upset, when she was initially informed about the opportunity to elect early retirement, it was not reasonably foreseeable Mrs. Lynn would be incapable of coping with the situation and suffer severe mental distress as a result. A "reasonable person, normally constituted" would not react in this manner.' "

There is no evidence that the defendants knew that plaintiff was in a fragile or vulnerable condition leading to depression or other mental disorder. Without knowledge of plaintiff's "peculiar susceptibility" there can be no liability. *Mason v. United States Fid. & Guar. Co.* (1990), 69 Ohio App.3d 309, 317, 590 N.E.2d 799, 804; *Czubaj, supra,* at 11; *Foster, supra,* 31 Ohio App.3d at 240, 31 OBR at 523–524, 511 N.E.2d at 407–408.

In summary, I find no legal basis for imposing the intentional tort doctrine in this case against A.D.T. or its employees. By its decision today, the majority has extended the liability of employers far beyond the carefully circumscribed boundaries set by the Supreme Court. I would affirm the trial court's grant of summary judgment in favor of the A.D.T. defendants.