JOURNAL ENTRY AND OPINION
Defendant-appellant, Geraldine Reed, appeals the decision of the Cuyahoga County Common Pleas Court that directed a verdict in favor of defendant-appellee, MetroHealth Medical Center ("MHMC"), at the close of appellant's case-in-chief during the trial on her complaint for medical malpractice. For the reasons that follow, we reverse and remand.
A review of the record reveals that appellant became ill and sought treatment at MHMC's urgent care facility sometime in August 1997. Part of appellant's treatment included receiving intravenous ("IV") fluids to counter the effects of dehydration. IV therapy involves the insertion of a needle into a vein and, in this case, was accomplished by a nurse employed by MHMC who inserted the needle into a vein located in appellant's right wrist. Appellant testified that it took the nurse three attempts to successfully insert the needle and that appellant complained of pain at each attempt. The needle was finally inserted and, despite swelling and soreness in area where the needle was inserted, the IV fluids were completely transfused within a couple of hours and appellant, feeling better, returned home shortly thereafter. Appellant, nonetheless, observed discoloration of her arm in the area where the needle was removed and continued to experience swelling and soreness in that area.
At subsequent follow up visits, appellant continued to complain not only of pain in her arm but bruising and swelling as well. She was prescribed pain medication and told to treat with ice packs. While the bruising eventually subsided after six months, the pain and swelling did not. Moreover, she was unable to complete tasks using that arm as she had previously.
Several months after her treatment at MHMC, appellant consulted with neurologist John Conomy, M.D., who also served as appellant's expert witness in her case against MHMC. When asked if he ever "placed an intravenous line" himself, Dr. Conomy testified that he had done so "lots of times" but would have not placed the IV in the precise area of the wrist chosen by the MHMC nurse. While he testified that he has placed an IV line "about the wrist," the precise site chosen by the nurse would not have been his first choice because there is a "large piece of peripheral nerve" at the wrist that should be avoided if at all possible.
Dr. Conomy concluded that appellant suffered a traumatic injury to the dorsal sensory branch of the radial nerve in her right wrist as a result of the negligence of the MHMC nurse in choosing to place the IV line at the site she did, which, in turn, caused the IV line to infiltrate.
 It's certainly possible that either the nerve was stimulated or injured with the placement of the needle. While that's a possibility, I think that it's more probable that even if that occurred, the significant injury occurred, pardon me, with the infiltration of intravenous fluid * * *.
At the close of appellant's case-in-chief, MHMC moved for a directed verdict arguing that (1) appellant had failed to properly qualify Dr. Conomy as an expert as to the placement of the IV and therefore lacked evidence as to the standard of care owed appellant; and (2) appellant lacked evidence that the placement of the IV deviated from the standard of care when Dr. Conomy's criticism was directed not at the placement of the IV but rather that the IV had infiltrated after placement.
The trial court found that Dr. Conomy was properly qualified as a neurologist and that his testimony supported both the causation and damages elements of a negligence action. As to the standard of care, however, the court stated:
 * * * Dr. Conomy on the stand basically stated that he could not comment on nursing standard of care because he was not a nurse. He admitted that he had no knowledge of the fusion protocol of [MHMC], he admitted he's not an infusionist nor a phlebotomist.
 He basically stated to the answer of one question with regard to whether or not he had inserted I.V. lines, his answer was yes, lots of times. That is a quote.
 Nothing further was elicited with regard to qualifying him with regard to the placement of the I.V. needle, but yet, he was asked questions about it and I allowed him to answer the question about placement.
At an earlier point in the trial, however, the court stated:
 * * * [Y]ou have asked him at least one question to qualify him with regard to placing an I.V. so I'm willing to go forward with regard to I'll go that far with regard to this question.
 I'll let him talk about placement but not maintenance. * * *
Nonetheless, the court thereafter granted MHMC's motion for a directed verdict on the basis that appellant failed to qualify Dr. Conomy as an expert regarding the placement of the IV needle. It clarified the basis for its ruling by stating:
 * * * Just so the record is complete, the Court's ruling is not that the case is directed out for failure to present a nurse to provide the nursing standard of care.
 It is the Court's feeling that the doctor could have testified as to placement of the needle if he had been properly qualified with proper foundation questions to qualify him as an expert in the field of placing IV needles. That's the sole basis for the Court's ruling so that it's clear, so the record is clear.
Appellant is now before this court and assigns two errors for our review. Succinctly, appellant complains that her expert was sufficiently qualified to render an opinion as to the standard of care of the MHMC nurse and, if not, that MHMC waived any error associated with her expert's testimony when it failed to timely object. MHMC maintains, on the other hand, that the trial court properly directed a verdict in its favor because appellant's expert was not properly qualified to render an opinion regarding the proper procedure for placement of an IV line and without such qualificationthere was insufficient evidence to support that MHMC deviated from the standard of care.
A trial court's ruling on a motion for directed verdict will not be reversed on appeal if the evidence adduced at trial and the facts established by admissions in the pleadings and in the record, construed most strongly in favor of the non-moving party, will only permit reasonable minds to reach a conclusion adverse to that party. See Civ.R. 50(A)(4); Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284. Neither the weight of the evidence nor the credibility of the witnesses is before the trial court when ruling on a motion for a directed verdict. Posin v.A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271, 275. A motion for directed verdict tests whether the evidence presented is legally sufficient to take the case to the jury. Wagner v. Midwestern Indemn.Co. (1998), 83 Ohio St.3d 287, 294.
Under the doctrine of respondeat superior, a hospital is liable for the negligent acts of its employees. Berdyck v. Shinde (1993),66 Ohio St.3d 573 citing Klema v. St. Elizabeth's Hosp. of Youngstown
(1960), 170 Ohio St. 519. In a negligence action involving the professional skill and judgment of a nurse, expert testimony must be presented to establish the prevailing standard of care, a breach of that standard, and that the nurse's negligence, if any, was the proximate cause of the patient's injury. Ramage v. Cent. Ohio Emergency Serv.,Inc. (1992), 64 Ohio St.3d 97, paragraph one of the syllabus.
While the admission of expert testimony is governed by Evid.R. 702, a threshold determination must first be made under Evid.R. 104(A) concerning the qualifications of the witness to testify. Succinctly, a witness may testify as an expert if that witness's testimony is beyond the knowledge or experience possessed by lay persons and is based on reliable scientific, technical or other specialized information. Further, the witness must possess specialized knowledge, skill, experience, training or education in the area in which that witness will testify. See Evid.R. 702. It is the scope of the witness's knowledge, however, and not his or her classification by title, that governs the threshold question of the witness's qualifications. Alexander v. Mt.Carmel Med. Ctr. (1978), 56 Ohio St.2d 155, 160; see, also, McKinney v.Schlatter (1997), 118 Ohio App.3d 328, 338; Nichols v. Hanzel (1996),110 Ohio App.3d 591, 598. Thus, the threshold question in this case is whether Dr. Conomy, a neurologist, is qualified to testify as to the standard of care of a nurse as to the placement of an IV needle.
MHMC relies on several cases wherein the trial court determined that the particular expert in one specialized area was not qualified under Evid.R. 702 to testify regarding the standard of care in another specialized area. McKinney v. Schlatter, 118 Ohio App.3d 591
(cardiovascular thoracic surgeon not qualified to testify as to standard of care of a cardiologist or emergency room physician); Nichols v.Hanzel, 110 Ohio App.3d 591 (internist/dermatologist not qualified to testify as to the standard of care of an orthopedist as pertains to the cause of osteonecrosis); Hudson v. Arias (1995), 106 Ohio App.3d 724
(gastroenterologist not qualified to testify as to the standard of care of a gynecologist regarding the failure to diagnose a precancerous lesion of the colon).
An expert witness is not required to be the best witness on the subject. To the contrary, the threshold question is whether the expert's testimony can assist the trier of fact in search of the truth. Alexanderv. Mt. Carmel Med. Ctr., 56 Ohio St.2d at 159. To be sure, the expert need not specialize in the same area as the defendant so long as it is shown that the fields of expertise overlap so that it is possible that more than one specialist may perform a particular procedure. Id. at 158.
It is in this regard that we find MHMC's argument flawed and the case law upon which it relies distinguishable. In the cases relied upon by MHMC, there was no showing that the experts' area of expertise and those of the particular defendants overlapped so as to qualify the expert to testify as to the standard of care regarding a particular course of treatment. This is not the case here. Dr. Conomy testified that the placement of an IV is a procedure that can be performed by several different medical professionals, including physicians, nurses and other medical professionals who undertake specialized training in IV therapy.
Moreover, Dr. Conomy testified that he placed IV lines several times but not at the particular site chosen by the MHMC nurse and then gave his reasons for not doing so. Dr. Conomy further testified that infiltration is dependent, in part, on the placement of the needle and opined that the placement of the needle in the particular area of appellant's wrist deviated from the standard of care of the particular medical professional who would be responsible for starting an IV line. The trial court therefore erred in directing a verdict on the basis that appellant's expert was not properly qualified to render an opinion as to the standard of care regarding the placement of an IV line.
Appellant's first assignment of error is well taken and is sustained. Appellant's second assignment of error is thereby moot and need not be addressed. See App.R. 12(A)(1)(c).
Judgment reversed and remanded for further proceedings.
This cause is reversed and remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J. and TERRENCE O'DONNELL, J., CONCUR.